# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PATRICIA KENNEDY,**

    **Plaintiff,**

**v.**                                                          Case No: 6:16-cv-2208-Orl-31DCI

**PANICCIA-INDIALANTIC, LLC,**

    **Defendant.**

## ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 30) filed by the Defendant, Paniccia-Indialantic, LLC (henceforth, "Paniccia"), and the response in opposition (Doc. 35) filed by the Plaintiff, Patricia Kennedy.

**I.**     **Background**

According to the allegations of the Complaint, which are accepted in pertinent part as true for purposes of resolving the instant motion, Kennedy has limited use of her hands and is bound to a wheelchair. (Doc. 1 at 1). Kennedy visited the Indialantic Center in Brevard County, a "place of public accommodation" as that term is defined by the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12183, 12181-12205a ("ADA"). (Doc. 1 at 2, 4). She encountered architectural barriers that discriminated against her on the basis of her disability; and she plans to return to the property "in the near future" to "avail herself of the goods and services" offered there.

(Doc. 1 at 4-5). "In the alternative," Kennedy asserts, she is a "tester" who monitors whether places of public accommodation are in compliance with the ADA.[1] (Doc. 1 at 5).

Kennedy filed her single-count ADA complaint against Paniccia on December 23, 2016. (Doc. 1). On September 7, 2107, Paniccia filed the instant motion, seeking dismissal on the grounds that Kennedy had failed to state a claim and lacked standing to pursue her ADA claim. (Doc. 30).

**II.   Standards**

A.   The Americans with Disabilities Act

Title III of the Americans With Disabilities Act, 42 U.S.C. §§ 12181-12189 ("Title III"), which addresses "Public Accommodations and Services Operated by Private Entities," provides that "[n]o individual shall be discriminated against on the basis of disability in any place of public accommodation." 42 U.S.C. § 12182(a). Any person subjected to discrimination on the basis of disability in violation of Title III may bring a private action. 42 U.S.C. § 12188(a). Title III defines "discrimination" as, among other things, "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). To prevail on a Title III ADA claim, a plaintiff generally has the burden of proving (1) that he or she is an individual with a disability; (2) that the defendant is a place of public accommodation; and (3) that defendant denied him or her full and equal enjoyment of goods, services, facilities or privileges offered by the defendant (4) on the basis of his or her disability. *Schiavo ex rel Schindler v. Schiavo*, 358 F.Supp.2d 1161, 1165 (M.D. Fla. 2005). The only relief available to

---

[1] It is not clear whether this is an alternative explanation for her initial visit to the Indialantic Center or an alternative basis for her plans to return in the future.

plaintiffs suing under Title III of the ADA is injunctive relief. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013).

      B.     <u>Standing to pursue an ADA Title III claim</u>

To have standing under Article III of the Constitution, a plaintiff must satisfy three elements: First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, rather than conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, there must be a causal connection between the injury and the conduct complained of; that is, the injury must be fairly traceable to the challenged action of the defendant rather than the result of independent action of a third party. *Id* And it must be likely, rather than merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 561. The party invoking the jurisdiction of the federal courts has the burden of establishing each element. *Id.*

To establish standing when injunctive relief is sought, the "injury in fact" element requires an additional showing: In addition to past injury, the plaintiff must demonstrate a "sufficient likelihood" of being affected by the unlawful conduct in the future. *Wooden v. Bd. of Regents of Univ. Sys. Of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001). Generally speaking, in the context of an ADA Title III claim, this is accomplished by showing that the plaintiff intends to return to the property at issue. The United States Court of Appeals for the Eleventh Circuit has rejected arguments that a tester's motive for a past (or future) visit to a place of public accommodation precludes him or her from having standing to seek injunctive relief under Title III of the ADA. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013). On a defendant's motion to dismiss, the Court must evaluate standing based on the facts alleged in the complaint. *See, e.g., Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).

C.  Stating an ADA claim

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'"  *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.    Analysis

Paniccia first seeks dismissal on the grounds that Kennedy failed, in her complaint, to aver the date when she was injured – *i.e.*, the date she visited the Indialantic Center – so that it can determine whether her claim has been raised within the appropriate limitations period.  (Doc. 30 at 2).  However, while Rule 8 requires that Kennedy provide a short and plain statement of the facts so as to state her claim, there is no requirement that she provide sufficient facts to rule out any potential affirmative defenses.

Paniccia next attacks Kennedy's standing to seek injunctive relief, arguing that she has failed to properly plead a threat of future injury.  More particularly, the Defendant contends that her assertion that she "plans to return to the property in the near future" (Doc. 1 at 4) is insufficiently concrete.  (Doc. 30 at 8).  On a motion to dismiss, however, the Court is obligated to rely on the facts alleged in the complaint to assess standing.  *Shotz*, 256 F.3d at 1081. Kennedy's allegations that she resides in Brevard County and that she intends to return to the Indialantic Center in that same county, along with her status as a tester of ADA compliance, is sufficiently specific at this stage of the proceedings.

Paniccia also raises two arguments that revolve around a previous ADA case in which it was sued by Leland Foster.  (Doc. 30 at 9).  Paniccia and Foster entered into a settlement (Doc. 30-5), which required Paniccia to remove certain architectural barriers.  Paniccia contends that it is in "substantial compliance" with the settlement agreement, which, it says, is "executory through

December 2019." (Doc. 30 at 9). Paniccia contends that this renders the instant suit moot. (Doc. 30 at 9). Paniccia provides no explanation as to why this would be so.

A case becomes moot, and therefore no longer a case or controversy for purposes of Article III, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Presumably, Paniccia wishes to argue that the issues presented by Kennedy are no longer live because they have been resolved via the Foster settlement agreement. But there is no basis for assuming, at this stage, that every architectural barrier on the property was identified in that agreement or for assuming that no additional barriers have been created in the meantime. Even if this were the case, so long as some barriers remain, and Kennedy encountered them – which is what she has alleged – then the issue of Paniccia's compliance with the ADA remains "live," at least for purposes of a motion to dismiss.

Also based on the Foster suit, Paniccia argues that the instant case is barred by collateral estoppel. (Doc. 30 at 10). Collateral estoppel, or issue preclusion, bars relitigation of an issue of fact or law that has been decided in a prior suit. *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1251 (11th Cir. 2014). It applies when:

> (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior suit was a necessary part of the judgment in that action; and (4) the parties are the same or in privity with each other and the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* Paniccia's argument fails on numerous fronts. First, collateral estoppel is an affirmative defense and is to be asserted in the responsive pleading, rather than by motion. Fed. R. Civ. P. 12(b). As noted above, there is no way to tell at this stage whether the same (alleged) ADA violations are at issue here as in the earlier suit, making it impossible for Paniccia to satisfy the

- 6 -

first three elements. Kennedy was not a party to the earlier suit, and there is not even a suggestion that she is in privity with Foster, meaning that the fourth element is also inapplicable. And, most fundamentally, no judgment was entered in the earlier proceeding.

Finally, Paniccia argues that Kennedy has failed to state a claim because the Complaint is impermissibly vague. As to this issue, Paniccia is on much firmer ground.

As noted above, Kennedy contends that she visited the Indialantic Center and encountered architectural barriers in violation of the ADA. (Doc. 1 at 4). The reader would not know it, based on the Complaint, but the Indialantic Center is a shopping center with 23 storefronts.[2] Anyone reading the Complaint would also be left in the dark as to the barriers she encountered, as Kennedy does not include that information. Instead, Kennedy provides a laundry list of violations that allegedly exist at the center – leaving it a mystery as to how she has become aware of them. The alleged violations themselves are described in terms so vague as to defy any effort to independently verify their existence. For instance, Kennedy alleges that

> [t]hat there is a lack of compliant accessible route [sic] connecting the disabled parking spaces with all the goods, services and facilities of the property, with excessive slopes, obstructions, narrow or blocked passageways, lack of sufficient maneuvering space, inaccessible merchandise, narrow merchandise aisles, hazards on ground surfaces, unsecured floor mats/carpeting.

(Doc. 1 at 4). No further information is provided regarding which parking spaces are affected, which of the 23 stores have inaccessible merchandise or unsecured mats, or anything of that nature. And the same holds true for Kennedy's remaining allegations.

As should be obvious, this Complaint – which is substantially similar to complaints filed by Kennedy in hundreds of cases – does not contain sufficient facts to "raise a right to relief above

---

[2] Kennedy also fails to provide even the barest of details about the Defendant, describing it only as an entity that "owns, leases, leases to, or operates" the Indialantic Center. (Doc. 1 at 2).

a speculative level" and thereby satisfy Rule 8. It is essentially nothing more than a placeholder. It does not provide fair notice to the Defendant as to Plaintiff's claim, and its consideration wastes the time of the parties, and this Court. The Complaint will therefore be dismissed.

The Defendant contends that the filing of this legally deficient pleading – and others like it in Kennedy's other cases – is evidence of bad faith on the part of Kennedy's counsel, a ploy to generate additional attorney's fees (1) for responding to the inevitable motion to dismiss and (2) for drafting an amended complaint. (Doc. 30 at 3). This Court has long had concerns about the unintended side effects of the mechanism set up by Congress to enforce the ADA. *See, e.g., Rodriguez v. Investco*, L.L.C., 305 F.Supp.2d 1278 (M.D. Fla. 2004) (describing how ADA fee award provision discourages efforts to cure violations without going to court, resulting in an "explosion" of private ADA-related litigation). Without deciding the issue here, the undersigned would not permit recovery of attorney fees for the drafting of an obviously deficient pleading. However, given that comparatively few ADA cases are resolved at trial or via summary judgment, the Court has little opportunity to review the merits of a fee request.

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 30) is **GRANTED IN PART AND DENIED IN PART**, as set forth above, and the Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE.** The Plaintiff may file an amended complaint on or before November 24, 2017.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 8, 2017.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE